UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANAND VIHAR LLC,

      Plaintiff/Counter Defendant,

v.                                   Case No: 8:16-cv-841-T-27TBM

THE EVANS GROUP INCORPORATED,

      Defendant/Counter Claimant.
_____/

## ORDER

**BEFORE THE COURT** are Plaintiff's Motion for Summary Judgment (Dkt. 22), which

Defendant opposes (Dkt. 32), and Defendant's Motion for Partial Summary Judgment (Dkt. 39),

which Plaintiff opposes (Dkt. 51). Anand Vihar LLC, a real estate developer, brought this single

count declaratory judgment action in Pasco County Circuit Court to determine its rights to

copyrighted conceptual site drawings prepared by The Evans Group Incorporated, an architecture

and design firm.[1] Evans Group removed the action to this Court and asserted counterclaims for

copyright infringement and breach of contract. Evans Group moves for summary judgment on its

copyright counterclaim. Anand moves for summary judgment on its contention that it has an

unrestricted license to use the copyrighted drawings for its construction project. Upon consideration,

the Motions are DENIED.

**Material Undisputed Facts**

      On September 9, 2015, the parties entered into a Letter of Agreement ("the Agreement") for

Evans Group to prepare conceptual site planning drawings for a fifty-five and over residential

---

[1] Evans Group is a family run corporation. Donald Evans is a licensed architect who manages the creativity. (Dkt. 25-1 at 8:9-12, 10:16). Dawn Michele Evans, Donald's daughter, manages the business. (Dkt. 25-1 at 10:14-15).

community in Pasco County ("the Project"). (Dkt. 22-1). Conceptual drawings are the initial design drawings for a construction project and the first step in the development process. (Dkt. 23 ¶ 7). Conceptual drawings cannot be used for construction or permitting purposes.  The Agreement states in pertinent part:

> The Architect hereby expressly reserves his copyright and other property rights in the Project Documents and it is agreed that upon payment in full of the above amount, the Client shall have a license to use the Conceptual Site Plan and Architecture for use on this Project and no other project. These documents are not to be reproduced, changed, or copied in any form or manner whatsoever without first obtaining the express written permission and consent of the Architect, nor are they to be assigned to any party without first obtaining said written permission and consent.

(Dkt. 22-1, Ex. A).

Evans Group prepared the conceptual drawings, and Anand paid in full. (Dkt. 4 ¶ 6). Evans Group owns copyright registrations for the following: (1) the Clubhouse, No. VAu 1-240-242, (2) the Courtyard, No. VAu 1-240-272, (3) the Lake and Club Villas, No. 1-240-270, and (4) the Garden Home, No. VAu 1-240-266. (Dkt. 39, Ex. A). From the conceptual drawings, Anand had electronic versions of the conceptual drawings prepared by an engineer using a computer aided drafting design program ("CADD"). The electronic drawings were then used for marketing materials. The parties agree that the use of the conceptual drawings for marketing materials is within the scope of the Agreement. (Dkt. 39 at 4).

As the planning for the Project progressed, Evans Group submitted an initial proposal and price quote to complete the final construction drawings. (Dkt. 23 ¶ 13). The parties' attempt at negotiating the scope of work and the expense of the final drawings failed. (Dkt. 22-1, Ex. C; Dkt. 32, Ex. I). The parties attempted to negotiate a fee that would allow Anand to use the conceptual drawings with another architect. (Dkt. 32, Ex. A ¶ 22). These negotiations also failed. Ultimately, Anand retained another architect, Brian Wolfe, to complete the construction drawings. (Dkt. 39-5

at 33:8-14). This action followed.

**Standard**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine disputes of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party fails to demonstrate the absence of a genuine dispute, the motion should be denied. *Kernel Records*, 694 F.3d at 1300 (citation omitted). On the other hand, "'[i]f no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted.'" *Lima v. Fla. Dep't of Children & Families*, 627 F. App'x 782, 785–86 (11th Cir. 2015) (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir.1994)).

**Discussion**

### I. Copyright Infringement

It is undisputed that Evans Group owns valid copyrights in the conceptual drawings and that Anand had access to the copyrighted conceptual drawings. Evans Group argues that drawings by Wolfe produced during discovery (the "discovery drawings") infringe on its copyrighted drawings.

Anand counters that Evans Group fails to identify protectable elements in the copyrighted drawings. And, rather than presenting evidence that the discovery drawings do not infringe on the copyrighted drawings, Anand responds with new drawings, arguing that the new drawings do not infringe.

"Copyright infringement has two elements: '(1) ownership of a valid copyright, and (2) copying of [protectable] elements.'" *Home Design Servs., Inc. v. Turner Heritage Homes Inc.*, 825 F.3d 1314, 1320-21 (11th Cir. 2016) (Rosenbaum, J., concurring) (quoting *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1325 (11th Cir. 2012)) (alteration in original), *cert. denied*, 137 S. Ct. 1335, 197 L. Ed. 2d 543 (Mar. 20, 2017)). The second element can be proven with direct proof of copying or "by demonstrating that the defendant[] had access to the copyrighted work and that the works are 'substantially similar'" *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 (11th Cir. 2008) (citation omitted). And, it is the expression of the idea that is protectable, not the idea itself. *Id.* at 1224-25.

"No matter how the copying is proved, the plaintiff also must establish specifically that the allegedly infringing work is substantially similar to the plaintiff's work *with regard to its protected elements.*" *Leigh v. Warner Bros.*, 212 F.3d 1210, 1214 (11th Cir. 2000) (emphasis in original). Substantial similarity exists "'where an average lay observer would recognize the alleged copy as having been appropriated from the [protectable features of the] copyrighted work.'" *Miller's Ale House*, 702 F.3d at 1326 (quoting *Oravec*, 527 F.3d at 1224) (alteration in original). Therefore, "'it must be determined both whether the similarities between the works are substantial from the point of view of the lay [observer] and whether those similarities involve copyrightable material.'" *Id.* (citation omitted) (alteration in original). "'Non-infringement may be determined as a matter of law on a motion for summary judgment, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly

instructed, could find that the two works are substantially similar.'" *Oravec*, 527 F.3d at 1223 (citation omitted).

Architectural work is defined under the Copyright Act as including "the arrangement and composition of spaces and elements in the design" as protectable elements and excluding "individual standard features" as protectable elements. 17 U.S.C. § 101. Individual standard features include "'common windows, doors, and other staple building components.'" *Oravec*, 527 F.3d at 1225 (quoting H.R.Rep. No. 101-735 (1990), as reprinted in 1990 U.S.C.C.A.N. 6935, 6949) (citation omitted). While individual standard features are not protectable, "an architect's original combination or arrangement of such features may be." *Id.* (citations omitted). However, "[c]ustomary styles and efficiency- or expectation-driven industry standards are not susceptible to copyright." *Home Design*, 825 F.3d at 1324. If plans are "drawn in a customary style and to industry standards," the similarities are non-copyrightable elements. *Id.* at 1326. And, "'similarities in the general layout of rooms can easily occur innocently.'" *Miller's Ale House*, 702 F.3d at 1326 (citation omitted). While in certain cases the question of substantial similarity is removed from the jury, that will not be the case here.

Anand retained Evans Group "to proceed with the Conceptual Site Planning and Conceptual Architecture for approximately +/- 330 units in three product lines, and a Club House Amenity[.]" (Dkt. 32, Ex. E). The Project is "aimed at a very specific audience - Indians, " and it is "designed specifically for the older, affluent, traditional Indian audience." (Dkt. 32, Ex. B). Conceptual drawings are created by coming up with a shape based on the site or zoning requirements, "tak[ing] the parts and everything else," and arranging and composing the parts. (Donald Evans Dep., Dkt. 25-1 at 21:7-10).

Evans Group argues that the conceptual drawings were "drawn from a blank piece of paper,

and contain an original composition and arrangement of features[.]" This argument lacks evidentiary support. There are a finite number of ways to permute a rectangular space. *Home Design,* 825 F.3d at 1325. While Dawn Michele Evans avers that design considerations were researched for a unique community concept, her affidavit is silent regarding the unique features of the copyrighted conceptual drawings. Donald Evans' testimony is likewise silent regarding the same.[2] While the concept of creating a community for the "older, affluent, traditional Indian audience" may be unique, the expression of the design for a clubhouse, homes, and condominiums for this community may not be. Evans Group fails to identify the protectable elements of its designs that "depart[] from customary style and industry standards and espouses unusual design choices." *Id.* at 1326.

Because Evans Group fails to meet its burden that the discovery drawings infringe on protectable elements of the conceptual drawings, its motion for summary judgment will be denied.[3] *See also Intervest Const., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914, 919 (11th Cir. 2008) ("[O]nly the original, and thus protected arrangement and coordination of spaces, elements and other staple building components should be compared.").

---

[2] This is not to suggest that Donald Evans will not testify at trial regarding the originality of his work. Notably, Anand does not present evidence of any differences between the conceptual drawings and discovery drawings, but rather compares "current iterations" to the conceptual drawings. (Dkt. 52 ¶ 5). Indeed, the similarities between the conceptual drawings and discovery drawings are significant and obvious. A reasonable jury could find that because Anand provided the CADD drawings and copyrighted works to Wolfe for his use, the similarities were intentional. (Dkt. 39-5 at 31:20-24, 32:1-14; Dkt. 52 ¶ 3).

[3] Anand's argument that summary judgment of non-infringement may be entered in its favor under Fed. R. Civ. P. 56(f) without formal notice because the " legal issue has been fully developed and the evidentiary record is complete" is rejected. As Anand argues, the drawings are "on-going," and new drawings were provided months after discovery closed. Accordingly, whether Anand's new drawings infringe on Evans Group's copyrighted works is not fully developed on this record.

## II. License to Use Conceptual Drawings

### A. License Granted in the Agreement

The parties dispute the interpretation of the terms granting Anand a license to use the conceptual drawings. Anand contends that the Agreement grants it a license to use the conceptual drawings without limitation for the Project. Evans Group counters that the terms prohibit Anand from reproducing, changing, or copying the conceptual drawings for any project without its express written permission and consent.

Under Florida law, "[t]he parties' intention governs contract construction and interpretation; the best evidence of intent is the contract's plain language."[4] *Whitley v. Royal Trails Prop. Owners' Ass'n, Inc.*, 910 So. 2d 381, 383 (Fla. 5th DCA 2005) (citations omitted). "When provisions in a contract appear to be in conflict, they should be construed so as to be reconciled, if possible." *Seabreeze Rest., Inc. v. Paumgardhen*, 639 So. 2d 69, 71 (Fla. 2d DCA 1994). While the court determines whether contract terms are ambiguous, if the terms "'are disputed and reasonably susceptible to more than one construction, an issue of fact is presented as to the parties' intent which cannot properly be resolved by summary judgment.'" *Strama v. Union Fid. Life Ins. Co.*, 793 So. 2d 1129, 1132 (Fla. 1st DCA 2001) (quoting *Universal Underwriters Ins. Co. v. Steve Hull Chevrolet, Inc.*, 513 So.2d 218, 219 (Fla. 1st DCA 1987)).

The Agreement states:

> The Architect hereby expressly reserves his copyright and other property rights in the Project Documents and it is agreed that upon payment in full of the above amount, the Client shall have a license to use the Conceptual Site Plan and Architecture for use on this Project and no other project. These documents are

---

[4] Contract interpretation is ordinarily a matter of state law. *In re Chira*, 567 F.3d 1307, 1311 (11th Cir. 2009). It is undisputed that the Agreement was made in Florida, and therefore Florida law applies. *Fioretti v. Massachusetts Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995).

not to be reproduced, changed, or copied in any form or manner whatsoever without first obtaining the express written permission and consent of the Architect, nor are they to be assigned to any party without first obtaining said written permission and consent.

(Dkt. 22-1, Ex. A). And, the parties dispute the interpretation of the terms granting a license to Anand.

Anand contends that the Agreement grants it a license to use the conceptual drawings without restriction on the Project and that the license only restricts its use of the conceptual drawings outside of the Project. Evans Group counters that Anand is prohibited from reproducing or changing the conceptual drawings without consent. There are questions of material fact concerning the parties' respective interpretations of the Agreement that cannot be resolved at summary judgment. *See Strama*, 793 So. 2d at 1132. Accordingly, Anand's motion on this issue will be denied.[5]

### B. Implied License

Alternatively, Anand contends that Evans Group granted it an implied license. As the alleged infringer, Anand has the burden of establishing an implied license. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235 (11th Cir. 2010). Similar to express licenses, an implied license may be limited. *Id.* The focus is on objective evidence revealing the intent of the parties. *Id.* And, "an implied license will be limited to a specific use only if that limitation is expressly conveyed when the work is delivered." *Id.*

Anand argues that the draft versions of the parties' agreement reveal an implied license. Each draft agreement includes the terms "[t]hese documents are not to be reproduced, changed, or copied in any form or manner whatsoever[.]" (Dkt. 22-1, Ex. A, D, E, F). And, the limitation expressly

---

[5] To the extent the Evans Group is moving for summary judgment on this issue, (*see* Dkt. 39 at 21), its Motion is likewise denied.

included in the Agreement is susceptible to more than one construction as previously discussed. *Latimer*, 601 F.3d at 1235; *Strama*, 793 So. 2d at 1132. Anand's motion on this issue, therefore, will be denied.

**Conclusion**

Accordingly, Plaintiff's Motion for Summary Judgment (Dkt. 22) and Defendant's Motion for Partial Summary Judgment (Dkt. 39) are **DENIED**.

**DONE AND ORDERED** this 17th day of July, 2017.

*/s/ James D. Whittemore*

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record